Morris Animal Refuge, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued February 7, 1980, before Judges CRUMLISH, JR., MENCER and CRAIG, sitting as a panel of three.

126

*Richard C. Unger, Jr.,* with him *Denise Bonn, Duane, Morris & Heckscher,* for appellant.

*Charles G. Hasson,* Assistant Attorney General, with him *Richard Wagner,* Chief Counsel and *Edward G. Biester, Jr.,* Attorney General, for respondent.

OPINION BY JUDGE CRUMLISH, JR., May 1, 1980:

Morris Animal Refuge appeals a determination by the Unemployment Compensation Board of Review (Board) granting benefits to James Dye. Previously a referee had reversed a determination of the Bureau of Employment Security[1] declaring Dye ineligible for benefits due to willful misconduct under the provisions of Section 402(e) of the Unemployment Compensation Law (Law), Act of December 5, 1936, Second Ex. Sess. P.L. (1937) 2897, *as amended,* 43 P.S. §802(e). We reverse the Board.

Dye was employed as a supervisor of three employees and was responsible for the proper care of animals and maintenance of the refuge facility. Inspections of the refuge revealed inadequate and improper treatment of animals, *i.e.,* failure to provide water for the animals and to maintain sanitary cages as well as lack of proper documentation of animals' treatment records. Accordingly, on April 1, 1978, Dye was placed on probation for one month during which

---

[1] Now the Office of Employment Security.

time he violated two company rules by adopting out a stray only one day after its receipt and by leaving work at 11 o'clock A.M. without permission. As a result of unsatisfactory work performance, he was demoted and his position was changed to attendant. When, on May 12, 1978, Dye was absent from work without reporting off, he was sent a discharge notice terminating his employment as of May 24 for "causes of which you are aware."

The issue confronting us is whether under these facts the employer was justified in discharging Dye for willful misconduct.

Since the employer had the burden of proving willful misconduct and did not prevail before the Board, our scope of review is limited to a determination of whether the Board's findings of fact can be sustained without a capricious disregard of competent evidence. *Houff Transfer, Inc. v. Unemployment Compensation Board of Review,* 40 Pa. Commonwealth Ct. 238, 397 A.2d 42 (1979).

The Board's award of benefits is based on the referee's finding that claimant was never issued any written warnings and was never suspended for violating employer's policy. However, that a claimant has never been warned of illegal misconduct has no bearing on his eligibility for benefits. *See* our recent holding that an advance warning is not a prerequisite to a discharge for willful misconduct, *Hartley v. Unemployment Compensation Board of Review,* 40 Pa. Commonwealth Ct. 371, 397 A.2d 477 (1979). While the record does not show a written warning, it does reveal that he was probationed and demoted after many oral warnings of misconduct, including inadequate treatment of the animals. He was also warned of his failure to put in a full 40-hour week because of unexcused lateness, and that future tardiness and early departures would not be tolerated.

The record tells us that the Board also erred when it concluded that the only specific act of alleged violation of the employer's interests involved his failure to report off sick on one occasion. This was only one of many allegations of willful misconduct leading to Dye's ultimate dismissal.

We conclude that Dye's past work record and job performance evidence an intentional and substantial disregard of the employer's interest and the standards of behavior the employer rightfully expected of him and that his conduct thus constituted "willful misconduct" warranting a denial of unemployment compensation benefits.

Accordingly, we

ORDER

AND Now, this 1st day of May, 1980, the order of the Unemployment Compensation Board of Review dated November 6, 1978, granting benefits to James Dye is reversed.

President Judge BOWMAN did not participate in the decision in this case.